UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| KATIE VON DIEZELSKI<br>AND PAUL DIEZELSKI<br><br>VERSUS<br><br>ALL MY SONS MOVING<br>& STORAGE OF BATON ROUGE, INC. | CIVIL ACTION<br><br>NO. 16-694-RLB<br><br>CONSENT |

## RULING

Before the Court is Defendant's Motion for Partial Summary Judgment (R. Doc. 20) filed on March 15, 2018. The motion is opposed. (R. Doc. 23).

**I.     Background**

This action involves an interstate move of personal property from Baton Rouge, Louisiana to Houston, Texas. Katie von Diezelski and Paul von Diezelski (collectively, "Plaintiffs") allege that Ms. von Diezelski initially contracted with All My Sons Moving & Storage of Baton Rouge, Inc. ("Defendant" or "AMS") on or about July 13, 2016 regarding the move. (R. Doc. 1 at 7).[1] There is no dispute that AMS picked up the property in Baton Rouge, Louisiana on July 30, 2016,[2] and unloaded the property in Houston, Texas on July 31, 2016. Plaintiffs allege that the shipped property was damaged in transit, and seek recovery for property damage, mental anguish, loss of enjoyment of life, and all other recoverable damages. (R. Doc. 1 at 7-9).

AMS removed the action based on the Court's jurisdiction under the 49 U.S.C. § 14706 (the "Carmack Amendment" to the Interstate Commerce Act). (R. Doc. 1). AMS asserts that while it charged Plaintiffs $2,871.75 for the move, the amount in controversy, exclusive of

---

[1] The parties have not submitted into the record a copy of any written contract executed on July 13, 2016.
[2] The Petition misstates that the move occurred on June 30, 2016. (R. Doc. 1 at 7).

interest and costs, exceeds $10,000, as required by 28 U.S.C. § 1337. (R. Doc. 1 at 2). There is no dispute that the Court has jurisdiction pursuant to 49 U.S.C. § 14706 and 28 U.S.C. § 1337. There is no also no dispute that both Plaintiffs have standing to sue under the Carmack Agreement. *See Banos v. Eckerd Corp.*, 997 F. Supp. 756, 762 (E.D. La. 1998) ("[C]onsignors, holders of the bills of lading issued by the carrier, and persons beneficially interested in the shipment although not in possession of the actual bill of lading, in addition to shippers, have standing to sue under the Carmack Amendment.").

AMS now moves for partial summary judgment for the purpose of clarifying the substantive law governing this dispute; to establish that AMS's liability for damaged property is limited to sixty (60) cents per pound per article; and to obtain dismissal of Plaintiffs' general damage claims for "past and future mental anguish and emotional distress." (R. Doc. 20-2 at 3).

In support of partial summary judgment, AMS relies on an Affidavit of Brandon Pollard, AMS's Operations Manager (R. Doc. 20-3), and the following documents: the Order for Service (R. Doc. 20-1); the Uniform Household Goods Bill of Lading and Freight Bill ("Uniform Bill of Lading") (R. Doc. 20-5); and the Combined Uniform Household Goods Bill of Lading and Freight Bill ("Combined Uniform Bill of Lading") (R. Doc. 20-6). Mr. Pollard, asserts that each of the foregoing documents "were reviewed and signed by the shipper [Katie von Diezelski] or her father, Paul Von Diezelski." (R. Doc. 20-3 at 2). Mr. Pollard further asserts that the Combined Uniform Bill of Lading "contains Valuation causes which were approved by the shipper" and that "state the carrier's standard liability is sixty (60) cents per pound per damaged item." (R. Doc. 20-3 at 2). Finally, Mr. Pollard asserts that the shipper, Ms. von Diezelski, "was provided with the opportunity to obtain insurance from a third party to protect the shipment but chose not to do so." (R. Doc. 20-3 at 2).

The Combined Uniform Bill of Lading provides, in relevant part, the following language in its "Valuation" clause:

> CUSTOMER (SHIPPER) IS REQUIRED TO DECLARE IN WRITING THE RELEASED VALUE OF THE PROPERTY. THE AGREED OR DECLARED VALUE OF THE PROPERTY IS HEREBY SPECIFICALLY STATED BY THE CUSTOMER (SHIPPER) AND CONFIRMED BY THEIR SIGNATURE HEREON TO BE NOT EXCEEDING 60 CENTS PER POUND PER ARTICLE UNLESS SPECIFICALLY EXCEPTED. THE CUSTOMER (SHIPPER) HEREBY DECLARES VALUATIONS IN EXCESS OF THE ABOVE LIMITS ON THE FOLLOWING ARTICLES:
>
> SHIPPER-IMPORTANT-READ WHAT YOU ARE SIGNING[.]

(R. Doc. 20-6 at 1). The "Valuation" clause is signed, but there are no articles or valuations listed. The Combined Uniform Bill of Lading also provides, in relevant part, the following language regarding obtaining insurance and the carrier's standard liability:

> 1. ALL MY SONS ADVISES YOU TO OBTAIN ADDITIONAL INSURANCE TO PROTECT YOURSELF FROM LOSS AND/OR DAMAGE OF GOODS. HOUSEHOLD GOOD CARRIER'S LIABILITY FOR LOSS OR DAMAGES TO ANY SHIPMENT IS **60 CENTS PER POUND PER ARTICLE**, UNLESS THE CARRIER AND SHIPPER AGREE, IN WRITING, TO A GREATER LEVEL OF LIABILITY . . . . **INITIAL \_\_\_\_\_.**
>
> A. I REALIZE THE CARRIER'S STANDARD LIABILITY IS **60 CENTS PER POUND PER ARTICLE (THIS IS NOT INSURANCE). INITIAL \_\_\_\_\_.**

(R. Doc. 20-6 at 3). The foregoing spaces are initialed, and the document is signed and dated July 30, 2016. (R. Doc. 20-6 at 3). Plaintiffs have neither confirmed nor denied, however, that one of them initialed and signed the Combined Uniform Bill of Lading on July 30, 2016.

AMS argues that in light of the foregoing language in the documents presented to Plaintiffs prior to the shipment, and the signatures obtained, the Court must find that AMS's liability is limited to sixty (60) cents per pound per article. AMS also seeks a ruling providing

3

that Plaintiffs' general damage claims for past and future mental anguish and emotional distress are preempted by the Carmack Agreement.

In opposition, Plaintiffs rely on an Affidavit of Paul von Diezelski (R. Doc. 23-2),[3] and focus on the Order for Service and the Uniform Bill of Lading. Mr. von Diezelski submits that he signed these documents, under protest, on July 31, 2016, the day the shipped items were unloaded in Houston, Texas. (R. Doc. 23-2 at 1). The Uniform Bill of Lading contains a "Valuation" clause providing two options. At an additional cost, Option 1 provides the shipper with "full replacement value protection," which provides coverage of the value declared or six (6) dollars per pound per article shipped. Option 2 provides that the shipper with the opportunity to waive "full replacement value protection," and agree to limit the shipper's liability to sixty (60) cents per pound per article shipped. The affidavit does not state whether one of the Plaintiffs signed the Combined Uniform Bill of Lading prior to the move.

Plaintiffs represent that prior to unloading the items, an AMS mover told Mr. von Diezelski to sign 'Option 2' under the carrier's liability section. Mr. von Diezelski refused, and instead signed "Option 1," adding the following statement in handwriting: "I am not sure what this is but I'll sign so I can get my stuff – I am not waiving any damage done." (R. Doc. 20-5 at 1). Mr. von Diezelski also added the following statement above his signature on the Order of Service: "Note: My furniture is a mess – damages and gashed, cut – dirty – I am not sure what I signed but they will not release my stuff without." (R. Doc. 20-1).

Plaintiffs oppose AMS's motion for partial summary judgment on the basis that AMS failed to provide them with a "reasonable opportunity to choose between levels of liability or to

---

[3] The original affidavit submitted with Plaintiffs' opposition was unsigned. The Court subsequently allowed Plaintiffs to substitute a signed version of the affidavit in place of the unsigned version.

4

obtain insurance from a third party," and, accordingly, AMS has not established that it is entitled to limited liability under 49 U.S.C. § 14706. (R. Doc. 23 at 4).

## II.     Law and Analysis

### A.     Legal Standards for Summary Judgment

Summary judgment shall be granted when there are no genuine issues as to any material facts and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. When a motion for summary judgment is properly made and supported under Rule 56(c), the opposing party may not rest on the mere allegations of their pleadings, but rather must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(c)(1). The non-movant's evidence is to be believed for purposes of the motion and all justifiable inferences are to be drawn in the non-movant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, summary judgment must be entered against the plaintiff, if he or she fails to make an evidentiary showing sufficient to establish the existence of an element essential to his or her claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Without a showing sufficient to establish the existence of an element essential to the plaintiff's claim, there can be "no genuine issue as to any material fact since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all facts immaterial." *Celotex Corp.*, 477 U.S. at 323.

Furthermore, only evidence that is competent, or admissible, may be used to support summary judgment. *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012). "'[U]nsupported allegations or affidavits setting forth ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Serna v. Law Office of*

5

*Joseph Onwuteaka*, P.C., 614 F. App'x 146, 153 (5th Cir. 2015) (quoting *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985)).

### B. The Carmack Amendment Applies to Plaintiffs' Claims

There is no dispute that the Carmack Amendment applies to Plaintiffs' claims. The Fifth Circuit has held that because the Carmack Amendment provides the exclusive cause of action for claims involving the loss or damage to goods arising from the interstate transportation of those goods by a common carrier, an action filed in state court that does not seek relief under the Carmack Amendment is nevertheless removable under the doctrine of complete preemption, so long as the amount in controversy requirement provided by 28 U.S.C. § 1337 is satisfied. *See Hoskins v. Bekins Van Lines*, 343 F. 3d 769, 778 (5th Cir. 2003). Plaintiffs do not challenge the Carmack Amendment as the basis for removal in this action, or as the source of substantive law governing this action.

### C. Limited Liability Under the Carmack Amendment

The Carmack Amendment provides that a carrier is liable for any "actual loss or injury to the [shipper's] property caused by (A) the receiving carrier, (B) the delivering carrier, or (C) another carrier over whose line or route the property is transported." 49 U.S.C. § 14706(a)(1). To succeed on a claim under the Carmack Amendment, a plaintiff must establish a prima facie case of negligence by demonstrating (1) delivery of the goods in good condition, (2) receipt by the consignee of less goods or damaged goods, and (3) the amount of damages. *Man Roland, Inc. v. Kreitz Motor Express, Inc.*, 438 F.3d 476, 479 (5th Cir. 2006). If a plaintiff establishes a prima facie case, a rebuttable presumption arises that the carrier was negligent. *Id.* (citing *Frosty Land Foods Int'l v. Refrigerated Transp. Co.*, 613 F.2d 1344, 1346-47 (5th Cir. 1980)). The carrier can overcome this presumption by showing that it was free from negligence and that the

6

damage was due to the inherent nature of the goods or attributable to an act of God, public enemy, the shipper, or public authority. *Id.* (citing *Mo. Pac. R.R. v. Elmore & Stahl*, 377 U.S. 134, 137 (1964)).

If a shipper establishes a prima facie case, a carrier may offer evidence that it limited its liability. The Fifth Circuit has adopted the Seventh Circuit's four-point "*Hughes* test" for determining whether a carrier has limited its liability. *Rohner Gehrig Co. v. Tri-State Motor Transit*, 950 F.2d 1079, 1081 (5th Cir. 1992) (en banc) (citing *Hughes v. United Van Lines, Inc.*, 829 F.2d 1407, 1415 (7th Cir. 1987)). The *Hughes* test, which statutory changes have since altered, requires that a carrier must (1) maintain a tariff within the prescribed guidelines of the Interstate Commerce Commission (now the Surface Transportation Board), (2) obtain the shipper's agreement as to his choice of liability, (3) give the shipper a reasonable opportunity to choose between two or more levels of liability, and (4) issue a receipt or bill of lading prior to moving the shipment. *Hoskins v. Bekins Van Lines*, 343 F.3d 769, 778 (5th Cir. 2003) (citing *Rohner*, 950 F.2d at 1081). The carrier bears the burden of proving that it complied with these requirements. *Nipponkoa Ins. Co., Ltd. v. Port Terminal R.R. Ass'n*, No. 10-0284, 2011 WL 1103584, at *5 (S.D. Tex. Mar. 23, 2011) (citing *Rohner*, 905 F.2d at 1081).

Assuming that Plaintiffs have established a prima facie case under the Carmack Amendment, the parties dispute whether AMS properly limited its liability to 60 cents per pound per article shipped. Having considered the relevant factors for the *Hughes* test, as well as all summary judgment evidence submitted, the Court concludes that AMS has not met its burden of establishing that it has limited its liability to 60 cents per pound per article shipped.

### 1. Whether AMS Maintains a Tariff

Legislation and jurisprudence issued since the Fifth Circuit's adoption of the *Hughes* test provides that a carrier must now provide a shipper a copy of its tariff upon request:

> Since *Hughes* was decided in 1992, Congress has amended the statutory provisions underlying the *Hughes* test. The first part of the *Hughes* test was derived from the Carmack Amendment's provision that the I.C.C. would authorize a motor carrier to establish rates limiting its liability. *See Rohner Gehrig,* 950 F.2d at 1082. In 1994 Congress eliminated the requirement that carriers of non-household goods file tariffs with the I.C.C. *See Sassy Doll Creations, Inc. v. Watkins Motor Lines, Inc.,* 331 F.3d 834, 841 (11th Cir. 2003) (citing Trucking Industry Regulatory Reform Act of 1994, Pub.L. No. 103–311, 108 Stat. 1673, 1683–85, codified at 49 U.S.C. §§ 10702 and 10762). In 1995 Congress added a requirement that carriers "provide to the shipper, on request of the shipper, a written or electronic copy of the rate, classification, rules, and practices upon which any rate applicable to a shipment, or agreed to between the shipper and the carrier, is based." *Id.* (quoting I.C.C. Termination Act of 1995, Pub.L. No. 104–88, 109 Stat. 803, 907-10 (quoting 49 U.S.C. § 13710(a)(1)). *See also* 49 U.S.C. § 14706(1)(B)). As the Eleventh Circuit has observed, "the most that can be said about the latest version of the statute is that a carrier is now required to provide a shipper with the carrier's tariff if the shipper requests it, instead of the carrier filing its tariff with the now defunct I.C.C." *Id.* Accordingly, courts have held that the *Hughes* test remains the same with one exception: Instead of maintaining a tariff in compliance with the I.C.C., a motor carrier must now, at the shipper's request, provide the shipper with "a written or electronic copy of the rate, classification, rules, and practices upon which any rate applicable to a shipment, or agreed to between the shipper and the carrier, is based." 49 U.S.C. § 14706(c)(1) (B). *See Emerson Electric Supply Co. v. Estes Express Lines Corp.,* 451 F.3d 179, 188 (3d Cir. 2006); *OneBeacon Insurance Co. v. Haas Industries, Inc.,* 634 F.3d 1092, 1100 (9th Cir. 2011); *Gulf Rice Arkansas, LLC v. Union Pacific R.R. Co.,* 376 F.Supp.2d 715, 722 (S.D. Tex. 2005) (quoting *Fireman's Fund McGee v. Landstar Ranger, Inc.,* 250 F.Supp.2d 684, 689 (S.D. Tex. 2003) ("If a shipper is unaware of the 'rate, classifications, rules and practices ... agreed to between the shipper and carrier,' the *shipper* has the burden to request a copy of the carrier's tariff.")).

*Tronosjet Maint., Inc. v. Con-way Freight, Inc.*, No. 10-3459, 2011 WL 3322800, at *3 (S.D. Tex. Aug. 2, 2011).

AMS does not submit any evidence supporting a finding that this prong has been satisfied. There is no evidence in the record indicating that AMS maintains a tariff, that

Plaintiffs requested such a tariff and were provided one, or that AMS is otherwise exempt from maintaining a tariff. Other than AMS's reference to the *Hughes* test, this prong is not addressed in AMS's motion, memorandum in support, or statement of undisputed facts. This prong is likewise not addressed by the Plaintiffs.

Accordingly, the motion is not sufficiently supported for the Court to determine whether or not there is a genuine issue of material fact as to whether AMS has established the first prong of the *Hughes* test.

### 2. Whether AMS Provided a Reasonable Opportunity to Choose Between Levels of Liability and Received Plaintiffs' Agreement as to Their Choice of Liability

Plaintiffs argue that "AMS failed to reach an agreement with plaintiffs regarding their choice of carrier liability limit prior to moving the property from Baton Rouge to Houston" and failed "to provide plaintiffs with a reasonable opportunity to choose between levels of liability or to obtain insurance from a third party." (R. Doc. 23 at 3-4). Based on the foregoing, Plaintiffs argue that AMS has not satisfied the second and third prongs of the *Hughes* test. (R. Doc. 23 at 4).[4]

The Combined Uniform Bill of Lading provides, in relevant part, the following language in its "Valuation" clause:

> CUSTOMER (SHIPPER) IS REQUIRED TO DECLARE IN WRITING THE RELEASED VALUE OF THE PROPERTY. THE AGREED OR DECLARED VALUE OF THE PROPERTY IS HEREBY SPECIFICALLY STATED BY THE CUSTOMER (SHIPPER) AND CONFIRMED BY THEIR SIGNATURE HEREON TO BE NOT EXCEEDING 60 CENTS PER POUND PER ARTICLE UNLESS SPECIFICALLY EXCEPTED. THE CUSTOMER (SHIPPER) HEREBY DECLARES VALUATIONS IN EXCESS OF THE ABOVE LIMITS ON THE FOLLOWING ARTICLES:

---

[4] Plaintiffs also assert that "AMS failed to provide plaintiffs with a receipt or bill of lading prior to moving the property." (R. Doc. 23 at 4). The Court discusses the fourth prong of the *Hughes* test below.

SHIPPER-IMPORTANT-READ WHAT YOU ARE SIGNING

. . .

1. ALL MY SONS ADVISES YOU TO OBTAIN ADDITIONAL INSURANCE TO PROTECT YOURSELF FROM LOSS AND/OR DAMAGE OF GOODS. HOUSEHOLD GOOD CARRIER'S LIABILITY FOR LOSS OR DAMAGES TO ANY SHIPMENT IS **60 CENTS PER POUND PER ARTICLE**, UNLESS THE CARRIER AND SHIPPER AGREE, IN WRITING, TO A GREATER LEVEL OF LIABILITY . . . . **INITIAL _____.**

A. I REALIZE THE CARRIER'S STANDARD LIABILITY IS **60 CENTS PER POUND PER ARTICLE (THIS IS NOT INSURANCE). INITIAL _____.**

(R. Doc. 20-6 at 1, 3).

There is insufficient evidence submitted to support a finding, as a matter of law, that Plaintiffs had an opportunity to review the foregoing language prior to shipment, and that Plaintiffs signed the Combined Uniform Bill of Lading, without declaring any specific values of articles to be shipped. If actually provided before the move with adequate time for consideration, the Combined Uniform Bill of Lading would have provided Plaintiffs with an opportunity to declare the value of their goods, to obtain additional insurance, and to elect a greater level of liability than "60 cents per pound per article" through additional agreement. The information contained within the Combined Uniform Bill of Lading, if provided prior to shipment, would have provided Plaintiffs with an opportunity to choose between different levels of liability. *See Haemerle v. All States Shipping, LLC*, No. 11-1986, 2013 WL 12284642, at *5 (N.D. Tex. Feb. 25, 2013) (finding that bill of lading with "declared value box" that included banks for shippers to declare a value of goods provided an opportunity to the shippers to elect a higher level of liability); *Johnson v. Bekins Van Lines Co.*, 808 F. Supp. 545, 549 (E.D. Tex. 1992), *aff'd*, 995 F.2d 221 (5th Cir. 1993) (finding that second prong of *Hughes* test was satisfied where "the face of the document clearly provided Plaintiff with a choice of differing levels of

liability, and it contained a valid provision setting a default rate of $1.25 per pound if no other valuation was specified.").

Given the record, however, there remains genuine issues of material fact regarding when the Combined Uniform Bill of Lading was provided, to whom it was provided, and whether that individual was given "reasonable notice of the liability limitation, and the opportunity to obtain information necessary to making a deliberate and well-informed choice." *Johnson*, 808 F. Supp. at 549 (quoting *Hughes*, 829 F.2d at 1419). Mr. Pollard's affidavit merely provides that the Combined Uniform Bill of Lading was "reviewed and signed" by one of the Plaintiffs. (R. Doc. 20-3 at 2). Plaintiffs do not mention anything about the Combined Uniform Bill of Lading in their opposition. AMS has not established that it provided Plaintiffs with a reasonable opportunity to review the language in the Combined Uniform Bill of Lading prior to shipment.

### 3. Whether AMS Issued a Receipt or Bill of Lading Prior to Moving the Property

Finally, as suggested above, AMS has not met its burden of establishing that it issued a receipt or bill of lading prior to the move. Mr. Pollard's affidavit does not definitely state that one of the Plaintiffs signed the Combined Uniform Bill of Lading prior to the move. Similarly, AMS's statement of undisputed facts provides no definitive statement regarding the date or time when the Combined Uniform Bill of Lading was provided to Plaintiffs. There is also no evidence in the record that AMS provided any other written document to Plaintiffs prior to the move.

### D. Plaintiffs' General Damage Claims are Preempted

Summary judgment is proper, however, on the issue of whether Plaintiffs may recover general mental anguish damages. "[T]he Carmack Amendment preempts any common law remedy that increases the carrier's liability beyond "the actual loss or injury to the property," 49

11

U.S.C. § 11707(a)(1), unless the shipper alleges injuries separate and apart from those resulting directly from the loss of shipped property." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 382 (5th Cir. 1998). Accordingly, even if Plaintiffs failed to limit their liability to 60 cents per pound per article with repsect to any "actual loss or injury to the property" shipped, the Carmack Amendment preempts Plaintiffs' claims for mental anguish and loss of enjoyment of life resulting from the loss of the shipped property. *Morris*, 144 F.3d at 382.

### III. Conclusion

Based on the foregoing,

**IT IS ORDERED that** Defendant's Motion for Partial Summary Judgment (R. Doc. 20) is **GRANTED IN PART and DENIED IN PART**.

**IT IS FURTHER ORDERED** that Plaintiff's claims for mental anguish and loss of enjoyment of life are **DISMISSED WITH PREJUDICE**.

Signed in Baton Rouge, Louisiana, on June 25, 2018.

                                                                  **RICHARD L. BOURGEOIS, JR.**
                                                                  **UNITED STATES MAGISTRATE JUDGE**